**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) CHAPTER 13 |
| | ) |
| DAWN MARIE EMERY-WATSON, | ) Case No. 08-12634 (BLS) |
| | ) (Jointly Administered) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| DAWN MARIE EMERY-WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Adversary No. 09-50001 |
| | ) |
| JOHN G. MANTAKOUNIS, | ) |
| | ) |
| Defendant. | ) |

**OPINION**[1]

Before the Court is an adversary proceeding seeking rescission of a real property deed of sale executed by a debtor in a Chapter 13 proceeding before this Court.  The Court held a trial on this matter on June 22, 2009.  For the reasons set forth below, the Court finds and adjudges that rescission of the transaction in question is appropriate and will be ordered.

**BACKGROUND**

The relevant facts are as follows.[2]  The plaintiff, Dawn

---

[1]   This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2]   The facts set forth herein are derived from the testimony of the witnesses at trial and the documents submitted into evidence in connection therewith.  (See Trial Tr., June 22,

Marie Emery-Watson (the "Debtor"), is a 40-year-old woman and the mother of two girls, ages 10 and 13.  She purchased certain real property located at 9 Neurys Lane, Newark, Delaware (the "Property") on March 26, 1998 for $84,900 with the proceeds from her mother's life insurance policy.  At the time of purchase, there was no lien or mortgage on the Property.  The defendant, John G. Mantakounis (the "Defendant" or "Mr. Mantakounis"), acquired a home neighboring the Property on October 21, 1998 for a purchase price of $100,000.  Both the Debtor and the Defendant have resided continously in their respective residences from the dates of purchase through all relevant times discussed below.

In 2002, the Debtor applied for a loan from Centrex Home Equity Company, LLC ("Centrex") in order to replace the roof, windows, and siding on the property.  Prior to making the loan, Centrex required the Debtor to execute a deed naming her husband John Watson ("Mr. Watson") as co-owner, because he was the couple's primary income earner at this time.  Mr. Watson thus became a co-owner of the Property, and the Debtor and Mr. Watson obtained a loan from Centrex for approximately $17,000 that was secured by an adjustable rate mortgage on the Property.  The Debtor's payments on the mortgage were slightly more than $200 per month.

In 2005, Mr. Watson was convicted on felony charges and

2009) [Docket No. 15].

2

ultimately sentenced to 15 years incarceration.  Faced with a loss of income due to the incarceration of her husband, Debtor fell behind in her mortgage payments.  On August 22, 2006, a complaint for mortgage foreclosure was filed against Debtor and Mr. Watson.  Judgment was entered by default on October 19, 2006 and a sheriff's sale scheduled.

With the financial help of family members and others, the Debtor was able to stave off a foreclosure sale of the Property in 2006.  By late 2007, however, the Debtor had once again fallen behind on her monthly mortgage payments and again faced the prospect of losing her family's home to foreclosure.  The Debtor discussed these financial difficulties with her family and others, including the Defendant.  Prior to his incarceration, Mr. Watson and the Defendant had worked together and were friends. This friendship continued through the exchange of letters after Mr. Watson was incarcerated in 2005.[3]  The Defendant and his wife were also on friendly terms with one of the Debtor's aunts at this time.  Thanks in large part to these relationships, the Defendant provided financial assistance to the Debtor on several occasions in early 2007.

The parties agree that the Defendant learned of the Debtor's most recent mortgage problems from the Debtor directly when she

_____

[3]    Copies of these letters, which discuss in part the disputed transaction, were admitted into evidence at trial.  See Pl.'s Tr. Exs. 7-11.

3

met with the Defendant at his home in August, 2007.  The
Defendant and Debtor also both agree that a plan was conceived at
that meeting by Debtor and the Defendant to prevent foreclosure
of the mortgage on the Property.  The parties dispute the details
of this plan, however.

The Debtor claims that she and the Defendant agreed that the
Defendant would pay off the balance due on her mortgage, and that
she and her husband would pledge the title to the Property to the
Defendant as collateral while repaying the Defendant an amount
equal to that which he expended in paying off the mortgage on the
Property.  The Defendant disputes this account, however, claiming
he intended to purchase the Property outright for the cost of
paying off the mortgage and other liens on the Property.

Following this August 2007 meeting, the Defendant contacted
Vance A. Funk, III ("Mr. Funk") a Delaware attorney who
specializes in real estate transactions, and asked Mr. Funk to
prepare an agreement of sale for the Property.  The terms of the
agreement, such as the purchase price, were supplied to Mr. Funk
by the Defendant.  Initially the debt was thought to be
approximately $26,000, but was later revealed to be approximately
$5,000 higher on account of unpaid taxes, sewer fees, and other
charges.  The Property was appraised at $140,000 in late 2008 and
$150,000 in early 2009, and the record reflects that its value at
the time of sale certainly was not lower than $140,000.  (See

4

Pl.'s Tr. Ex. 12; Def.'s Tr. Ex. 14).  After questioning the low purchase price,[4] Mr. Funk drafted an agreement of sale for the Defendant.

The Defendant mailed a copy of the agreement of sale to Mr. Watson in prison, along with a letter. (See Pl.'s Tr. Ex. 7).  It was one of several letters and phone calls the Defendant made to Mr. Watson in connection with the Property transaction.  Mr. Watson signed the agreement of sale on October 2, 2007.

The agreement of sale was redrafted after the discovery of additional liens on the Property, however.  Following the signing of a revised agreement of sale by the Debtor, Mr. Watson, and the Defendant, settlement occurred on December 27, 2007.  The settlement location was Mr. Funk's office.

That same day, the Debtor signed an agreement with the Defendant to lease the Property from him (the "Lease").  The Lease had a one-year term, but was renewable.  The terms of the Lease called for the Debtor to make rent payments of $700 per month, but the Defendant testified that he and the Debtor

---

[4]      According to Mr. Funk, he initially told the Defendant that he thought drawing up the agreement of sale would be a waste of time because he did not believe any seller would sign an agreement for such a low price.  Mr. Funk also claims to have told Defendant that he doubted an agreement for such a price "would survive" if it "was ever questioned in court later on." (Def.'s Tr. Ex. 1 at 4).  Nevertheless, after being told by the Defendant that this was a "special situation," Mr. Funk drafted the agreement.  (Id. at 4-5).

verbally agreed that the Debtor would only have to make monthly payments of $200 until she obtained a better job.

The Debtor failed to make these monthly payments, and the Defendant instituted legal proceedings against her for back rent and summary possession in Delaware Justice of the Peace Court, styled Civil Action No. JP12-08-005029.  The Defendant's initial lawsuit was dismissed for procedural reasons.  A refiling soon followed, however, styled Civil Action No. JP13-08-007816.

Then, on November 3, 2008, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code (the "Code"), thus halting the state court proceeding against her.[5]  In hopes of reviving the state court action, Mr. Mantakounis filed a motion in this Court for relief from the automatic stay [Case No. 08-12634, Docket No. 28] to pursue his claims for back rent and summary possession against the Debtor on December 17, 2008.  Mr. Mantakounis claimed that the Debtor and her young daughters were his tenants, and that the Debtor was significantly behind on her rent payments to him.

On January 2, 2009, the Debtor filed this adversary proceeding.  The Debtor's complaint [Docket No. 1] seeks rescission of the deed conveying the Property to the Defendant

---

[5]    An attorney from Legal Services Corporation of Delaware represented the Debtor in connection with the filing of her bankruptcy petition, as well as the filing and prosecution of this adversary proceeding.

based on several different legal theories.  Stated most simply, the Debtor alleges she was deceived into deeding the Property to the Defendant to serve as what she believed was collateral for a loan, while the Defendant claims he purchased the Property outright.

Trial in this matter was held on June 19, and the Plaintiff, Mr. Watson, and Mr. Mantakounis, as well as two other witnesses, appeared and testified.  Valuation reports by the parties' respective appraisers were admitted into evidence without objection.

## II. <u>JURISDICTION AND VENUE</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

## <u>DISCUSSION</u>

The Debtor seeks to rescind the transfer of the Property to the Defendant based on a number of different legal theories, including fraud.  As described more fully below, the Court finds that the "agreement of sale" for the Property is unconscionable under Delaware law, and is therefore void.  Accordingly, the Court need not reach the question of whether the Defendant intentionally misled and defrauded the Debtor and Mr. Watson.

7

For a contract to be found unconscionable under Delaware law, "there must be an absence of meaningful choice and contract terms unreasonably favorable to one of the parties." Tulowitzki v. Atl. Richfield Co., 396 A.2d 956, 960 (Del. 1978).[6]  In Delaware, contract terms are unreasonably favorable when the terms are "such as no man in his sense and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other." Id. (citing Williams v. Walker-Thomas Furniture Co., 350 F.2d 445 (U.S. App. D.C. 1965)); see also Graham v. State Farm Mut. Aut. Ins. Co., 565 A.2d 908 (Del. 1989) ("[F]or a contract clause to be unconscionable, its terms must be so one-sided as to be oppressive.").  In other words, disparity in bargaining power alone will not support a finding of unconscionability.  Tulowitzki, 396 A.2d at 960.

Although courts generally, and this Court in particular, are reluctant to void contracts on grounds of unconscionability, the doctrine is well-established in the common law of Delaware and is employed where the facts and circumstances are sufficiently extreme to warrant its application.  The Delaware Court of Chancery has invoked the doctrine in a case with facts strikingly

---

[6]    This "absence of meaningful choice" is sometimes referred to as "procedural unconscionability" and the requirement that the terms be "unreasonably favorable to one of the parties" is sometimes referred to as "substantive unconscionability." Progressive Intern. Corp. v. E.I. Du Pont de Nemours & Co., C.A. No. 19209, 2002 WL 1558382, at *11 n.46 (Del. Ch. July 9, 2002) (citing Farnsworth on Contracts § 4.28 (2d ed. 2000)).

similar to those at bar.  In <u>Ryan v. Weiner</u>, 610 A.2d 1377 (Del.
Ch. 1992), Chancellor Allen was confronted with a plaintiff,
Ryan, seeking an order canceling a deed to his house that he gave
to another, Weiner, because he allegedly was deceived into
thinking the deed was really a disguised security interest.  <u>Id.</u>
at 1378-79.  As in this case, the plaintiff was faced with
imminent foreclosure at the time of the purported sale, and the
defendant promised to help the plaintiff save his home so that he
could continue to live in it.  <u>Id.</u>  Also as in this case, the
parties entered into a lease agreement following the purported
sale.  <u>Id.</u> at 1379-80.

Although Chancellor Allen did not reach the question of
whether the defendant in fact committed common law fraud, he did
find that the agreement of sale was unconscionable and
subsequently rescinded it on account of a unilateral mistake of
fact.  In so doing, Chancellor Allen detailed the evolution of
the unconscionability doctrine, with a particular emphasis on its
application to real estate contracts in the latter half of the
twentieth century.  <u>Id.</u> at 1380-84.  As the Chancellor observed,
numerous courts have set aside contracts for the sale of real
property on the grounds of unconscionability.  <u>Id.</u> at 1383-84
(collecting cases).

Such a result is also appropriate here.  The Court finds
that the Debtor had an absence of meaningful choices with regard

to saving the Property from foreclosure at the time they contracted with the Defendant for its "sale." Family members had helped save the Property from foreclosure once, but could not or would not help again. The record also reflects that the Debtor was in difficult personal and financial straits on account of her spouse's incarceration. Moreover, the record reflects that the Debtor's financial situation at the time was such that refinancing was not an option.

Of course, the circumstances surrounding Debtor when she entered into the transaction in question are not enough, by themselves, to set aside the agreement of sale. Debtors before this Court often face very trying circumstances and limited options. What makes this case so unusual – and what ultimately makes rescission appropriate – is that the terms of the agreement of sale are so one-sided that they shock the conscience of the Court.

The Defendant obtained the Property for about $30,000 in late December 2007, even though it was appraised at five times that amount – $150,000 – in February 2009. (<u>See</u> Def.'s Tr. Ex. 14).[7] Of course, the Court is required to evaluate the substantive fairness of the transaction at the time of contract, not a year after the fact. But the facts indicate that, if

---

[7]    The Property was also appraised by Plaintiff's expert at $140,000 in December 2008. (<u>See</u> Pl.'s Tr. Ex. 12).

anything, the value of the Property would have been even higher
at the time of sale than it was at the time of appraisal.  Even
if the Property had been worth tens of thousands of dollars less
than its appraisal value, however, the Court would still find the
terms of this sale – if a sale is indeed what both parties
intended – to be shocking and oppressive.

There is ample caselaw from across the country – and
spanning across decades – in which courts have rescinded
contracts that purport to transfer real property for
approximately a quarter of its value based on, in whole or in
part, inadequacy of consideration.  See, e.g, Lampley v. Pertuit,
199 So.2d 452 (Miss. 1967); Daniels v. Forston, 95 S.W.2d 1075
(Ky. 1936).  In Delaware, meanwhile, courts have long set aside
judicial sales of real property for less than 50% of the
property's fair market value based on inadequacy of
consideration.  See Central Nat. Bank of Wilmington v. Industrial
Trust Co., 51 A.2d 854, 858 (Del. Super. 1947) ("Subject to any
unusual circumstances, if [market value at time of sale] is more
than twice the sale price, there is such gross inadequacy as will
shock the conscience of the Court and justify setting the sale
aside."); see also Atlantic Properties Group, Inc. v. Deibler,
C.A. No. 93M-11-001, 1994 WL 45433 at *6 (Del. Super. Jan. 6,
1994) ("[B]oth parties argue that the Court should apply the 50%
of fair market value test which is generally applicable in

11

Delaware in determining the adequacy of the price in a sheriff's sale of real property.").

With this in mind, it should come as no surprise that the Court finds that the terms of the sale agreement in this case unreasonably favored the Defendant at the expense of the Debtor at the time of sale, and were so one-sided as to be oppressive. Were this transaction allowed to stand, it would reward the Defendant with a windfall for what amounted to, at a minimum, sharp dealing.

Because the Court finds that both the procedural and substantive elements of Delaware's unconscionability test have been proven by the Debtor, the Court concludes that rescission of the agreement of sale is warranted.[8]  In order to return the parties to the status quo in place at the time of the purported sale, the deed to the Property shall be returned to the Debtor and Mr. Watson, and the Defendant will be granted an equitable lien on the Property for the amount of consideration paid by the Defendant for the Property, whether directly to Debtor or indirectly on her behalf, to the Defendant.  This amount shall also include any amounts paid by the Defendant that were necessary for maintenance and upkeep of the Property, including

---

[8]     Consequently, the motion for relief from stay filed by the Defendant in Debtor's underlying bankruptcy case [Case No. 08-12634, Docket No. 28] to pursue his claims for back rent and summary possession against Debtor is hereby dismissed as moot.

12

electric and sewer bills, but shall not include amounts due for "rent" because the Court's ruling today extinguishes any liability on the part of the Debtor to pay rent to the Defendant.[9]  This equitable lien shall be imposed on the Property immediately, and the parties shall confer for the purposes of calculating the amount this lien secures and report this amount to the Court within fifteen (15) days of entry of this Opinion.

## CONCLUSION

For the foregoing reasons, the Court finds that the agreement of sale at issue in this case is unconscionable.  Accordingly, the Court will rescind the contract and order that title to the Property be returned to the Debtor.

An appropriate order follows.

By the Court,

_____

Dated: July 31, 2009                    Brendan Linehan Shannon
                                        United States Bankruptcy Judge

---

[9]     For this reason, the Court will credit any amounts paid by the Debtor to the Defendant for "rent" toward the amount the Defendant is entitled to receive on account of this Opinion.

13